IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-653

No. COA21-554

Filed 4 October 2022

Wake County, No. 20-CVS-9988

JOSEPH LANNAN, AND LANDRY KUEHN, on behalf of themselves and others similarly situated, Plaintiffs,

v.

BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, known and distinguished by the name of "THE UNIVERSITY OF NORTH CAROLINA," a body politic and corporate, Defendant.

Appeal by defendant and cross appeal by plaintiffs from order entered 30 June 2021 by Judge Edwin G. Wilson, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 8 February 2022.

> *White & Stradley, PLLC, by J. David Stradley and Robert P. Holmes, IV, and Law Office of Brian D. Westrom, by Brian D. Westrom, for plaintiffs-appellees/cross-appellants.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorneys General Laura McHenry and Kari R. Johnson, and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr. and Jennifer K. Van Zant, for defendant-appellant/cross-appellee.*

STROUD, Chief Judge.

Defendant Board of Governors of the University of North Carolina appeals

from an order denying its Motion to Dismiss Plaintiffs Joseph Lannan and Landry Kuehn's breach of contract claims. Plaintiffs cross appeal from the same order's grant of Defendant's Motion to Dismiss their state constitutional claim under *Corum v. University of North Carolina Through Bd. of Governors*, 330 N.C. 761, 413 S.E.2d 276 (1992). We first confirm our appellate jurisdiction and grant Defendant's Petition for Writ of Certiorari as to the issue of whether the trial court erred in denying its Motion to Dismiss the contract claims for failure to state a claim under North Carolina Rule of Civil Procedure 12(b)(6). N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2021). As to Defendant's appeal, because Plaintiffs' Amended Complaint pled a valid implied-in-fact contract and such a contract can waive the State and its agencies' sovereign immunity, the trial court properly denied Defendant's Motion to Dismiss the contract claims on sovereign immunity grounds. Because Plaintiffs adequately pled breach of contract claims, the trial court also acted correctly in denying Defendant's Motion on Rule 12(b)(6) grounds. Turning to Plaintiffs' cross appeal, because their contract claims are adequate state remedies, the trial court properly granted the Motion to Dismiss their *Corum* claim. Therefore, we affirm.

## I.  Background

Since this case is at the pleading stage, we rely upon the facts as alleged in Plaintiffs' Amended Complaint.[1]  Defendant is the Board of Governors for the University of North Carolina at Chapel Hill ("UNC-CH") and North Carolina State University at Raleigh ("NCSU"), two constituent institutions of the University of North Carolina ("Universities").  Before the Fall 2020 Term, Defendant required students planning to attend the Universities to pay certain student fees.  These students included Plaintiff Kuehn, an undergraduate student at UNC-CH, and Plaintiff Lannan, a graduate student at NCSU.  The Universities required students to pay these fees to register as a student, "remain . . . in good standing," receive "scholastic credit," and "obtain a transcript" for the Fall 2020 term.

The student fees were also "earmarked for specific categories of services and benefits" that Fall 2020 students at the Universities "[were] entitled to receive" from the Universities.  The Universities "represented in writing on their respective websites and in written communications to each student" through emails to students,

---

[1] Plaintiffs filed their original Complaint on 10 September 2020.  Because the order on appeal ruled on Defendant's Motion to Dismiss the Amended Complaint, we do not discuss the original Complaint, with one exception noted below, for the remainder of this opinion.  For completeness of the procedural history, we also note Defendant filed a motion to dismiss the original Complaint on 29 October 2020, and the Chief Justice of the Supreme Court of North Carolina, pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, designated the case as "exceptional" and specifically assigned Judge Wilson to the case on or about 18 November 2020.

account statements, and an itemized bill, "each component Student Fee would be used for the purposes described . . . for that component fee." For example, both Universities had fees related to student health services. UNC-CH described its student health services fee as: "**<u>Student Health Fee</u>** - $400.16: 'Funds medical services for students, including the salaries, maintenance and operation of student health centers.'" Similarly, NCSU described its student health services fee as: "**<u>Student Health Services Fee</u>** – This fee of $407.00 is used by the University Health Center to offer medical and counseling services to students." The other student fees for the Fall 2020 term included: academic registration, education technology, library services, scholarships, teaching awards, student IDs, different schools within the universities, campus security, campus programming, student organizations, student publications, student government, student legal services, the student centers, sustainability, recreational sports, intercollegiate athletics, transit, night parking, and debt servicing for and expansion of certain on-campus buildings. Plaintiffs and the other students at the Universities paid these fees with the understanding they would be used for the listed services and benefits.

¶ 4 In addition to the student fees, Plaintiffs and some other students purchased from the Universities "optional motor vehicle parking permits which permitted the purchasers to park their motor vehicle on NCSU's and UNC-CH's convenient on-campus parking lots for the Fall 2020 Terms." For Plaintiff Lannan, this fee covered

only the Fall 2020 Term, but for Plaintiff Kuehn, the parking permit included both the Fall 2020 and Spring 2021 Terms.

¶ 5        In August 2020, both NCSU and UNC-CH took measures to switch from in-person to online learning and shut down their campuses for the Fall 2020 Term. The original Complaint indicated this shut down was due to the COVID-19 pandemic, but the Amended Complaint includes no explanation for the shutdown. As a result of the shutdown, the constituent Universities: "evicted all students from on-campus housing"; cancelled "all in-person, on-campus instruction"; restricted "campus transportation service to the point that service was of extremely limited value"; barred students from accessing "on-campus student athletic[,] recreation facilities," and student activity venues; "shut down on-campus libraries . . . workshops, laboratories[,] studios, . . . museums[,] arboretums," the student unions, and dining halls; "stopped live art performances on campus"; prohibited students from attending intercollegiate sports; "discontinued student organization activity and other in-person student activity"; and "curtailed student health services and advised Fall 2020 Term students that they should obtain health services" elsewhere.

¶ 6        Based on these alleged facts, Plaintiffs eventually filed an Amended Complaint on 3 February 2021. The Amended Complaint includes claims for breach of contract, "or, in the alternative, if it is determined that Plaintiffs cannot assert a claim for breach of contract, a '*Corum* claim'" against Defendant for its constituent Universities

UNC-CH and NCSU's decisions to "improper[ly]" assess and retain student fees and on-campus parking permit fees "after on-campus classes, activities, and student services at the" Universities "were stopped or curtailed in and after August 2020." The Amended Complaint states the suit is a class action "on behalf of students who registered and paid student fees for the Fall 2020 academic semester" at the constituent Universities of the University of North Carolina, with a separate class for those who paid for on-campus parking. As a result, the Amended Complaint includes "Class Action Allegations," (capitalization altered) but the class action component of the lawsuit is not at issue in this appeal.

¶ 7          Focusing on the relevant portions of the lawsuit, the breach of contract claims cover both student fees and parking permit fees. As to the student fees contract claim, the Amended Complaint alleges the Universities "offered to Plaintiffs and other prospective Fall 2020 Term . . . students that if the prospective students registered for the Fall 2020 Terms and promised to pay" student fees they "would, in turn, receive the services, benefits, and opportunities" described in the student fees. Plaintiffs and the other students then "accepted the offers" when they paid their student fees and thus "expected to receive, and were entitled to receive . . . all of the services, benefits, and opportunities" described. According to the Amended Complaint, this constituted "a meeting of the minds," thereby creating a contract.

¶ 8      While Plaintiffs and the other students in the class "fully performed their duties" by paying the student fees, the Universities breached the contract when they shut down their campuses, as detailed above, because they either stopped providing the services or "rendered" them "of no value whatsoever." The Amended Complaint alleges "[b]ut for the unnecessary decisions" to shut down the campuses, Plaintiffs and the other students in the proposed class "would have regularly gone on their respective campuses" and thus taken advantage of the services and benefits provided for by the student fees, as they and others had done in the past. Finally, the Amended Complaint alleges Plaintiffs and the other students suffered damages because they did not receive "the services, benefits, and opportunities" they paid for with the student fees and the fees "were not adjusted, pro-rated, or rebated in any way" following the campus shutdowns.

¶ 9      As to the parking fees contract claim, the Universities "offered to sell optional parking permits" to Plaintiffs and other students "which would permit the purchaser to park a motor vehicle in an on-campus parking lot during the Fall 2020" Term. Plaintiffs and some other students "accepted the offers" by buying the parking passes, thereby forming a contract. The Amended Complaint alleges all relevant students performed by paying their parking fees fully and expected and were entitled to receive "the full benefit of their parking permits for the duration of the Fall 2020 Term." But the Universities breached the contract by shutting down their campuses, which

meant the on-campus parking passes were "rendered worthless." While Plaintiffs and other students received partial refunds, the refunds did not cover the full cost of the parking passes and thus the full damages suffered.[2]

¶ 10    For both contract claims, the Amended Complaint also alleges Defendant waived sovereign immunity. It first alleges Defendant is a State agency. Then, it alleges when the State or its agencies, such as Defendant, enter into a contract, it "implicitly consents to be sued for the breach of that contract and the doctrine of sovereign immunity is not a defense." (Citing *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d. 412, 423–24 (1976).) The Amended Complaint finally alleges Defendant waived "any defense based on sovereign immunity when it entered into the contracts" for student fees and parking permits as already described.

¶ 11    Finally, the Amended Complaint includes a *Corum* claim "in the alternative" to its breach of contract claims if those are barred by sovereign immunity. The Amended Complaint alleges a *Corum* claim allows a direct claim under our Constitution for a violation of a right protected by our Constitution when a plaintiff lacks access to other statutory or common law remedies. Specifically, Plaintiffs allege the contracts with the Universities—wherein they paid money for certain services

---

[2] As to Lannan and other NCSU students, the Amended Complaint first alleges, "NCSU rebated no parking permit fees to Lannan, or, upon information and belief, to any other" impacted students before later saying Lannan received a rebate.

and benefits—created a "vested property interest" in those service and benefits such that they would either receive those things or "receive a timely and proportionate refund" for what the Universities "promised, but failed, to provide." The Amended Complaint explains under our Constitution's Article I, § 19 "[L]aw of the [L]and" Clause, such private property could not be "taken for public use" unless "just compensation" was paid. (Citing *Eller v. Bd. of Educ. of Buncombe Cty.*, 242 N.C. 584, 586, 89 S.E.2d 144, 146 (1955).) According to the Amended Complaint's allegations, when the Universities shut down and denied Plaintiffs and other students those benefits, they took the vested property interest, and they did not provide appropriate refunds as just compensation.

¶ 12        The Amended Complaint also states "If the claims for breach of contract . . . fail, then Plaintiffs" and other students in the proposed classes "lack any sort of state remedy." As part of this paragraph, the Amended Complaint states, "But for the doctrine of sovereign immunity, Plaintiffs and the other students would have claims against [Defendant]" or its constituent institutions "for the intentional tort of conversion or for unjust enrichment." Finally, as to the *Corum* claim, Plaintiffs allege they are "entitled to" money damages.

¶ 13        On 2 March 2021, Defendant filed a "Motion to Dismiss [the] Amended Complaint" based on North Carolina Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Capitalization altered.) First, Defendant argued "Plaintiffs' claims are

barred by sovereign immunity." Next, Defendant contended the Amended Complaint failed to state claims for relief for breach of contract and for a state constitutional violation. Finally, Defendant's Motion to Dismiss claimed Plaintiffs "lack standing to assert the claims in the Amended Complaint on behalf of other students" and fail to show "Defendant's alleged conduct proximately caused Plaintiffs' alleged damages."

¶ 14 Following a hearing on 10 May 2021, the trial court entered an order on Defendant's Motion to Dismiss on 18 June 2021. The order granted the Motion to Dismiss Plaintiffs' *Corum* claim, but it denied the Motion to Dismiss Plaintiffs' contract claims. On or about 23 June 2021, Defendant filed a notice of appeal from that order.

¶ 15 On 29 June 2021, Plaintiffs filed a "Motion to Amend [the] Order." (Capitalization altered.) Plaintiffs' Motion to Amend requested the trial court amend its order on Defendant's Motion to Dismiss to make clear the *Corum* claim was "properly pled" in general and only failed because Plaintiffs "had an adequate state-law remedy" via the contract claims such that "the court of appeals would have jurisdiction to review the dismissal of the *Corum* claim as an alternative basis for denying the Motion to Dismiss." Plaintiffs also requested, "[i]n the alternative," the order be amended "to certify the dismissal of the *Corum* claim as a final judgment and that there is no just reason for delaying the appeal of that dismissal."

The trial court entered an "Amended Order" on 30 June 2021. (Capitalization altered.) The trial court still granted Defendant's Motion to Dismiss as to the *Corum* claim and denied it as to the contract claims. It then added language "conclud[ing] that there is no just reason to delay the appeal of the dismissal of the Corum claim and that Order is hereby certified for immediate appeal," as Plaintiffs had requested. On 1 July 2021, Plaintiffs filed written notice of appeal from the Amended Order's dismissal of their *Corum* claim. Defendant filed a notice of appeal from the Amended Order's denial of its Motion to Dismiss the contract claims on 6 July 2021.

## II. Analysis

This case presents three issues for our review arising from Defendant's appeal and Plaintiffs' cross-appeal of the Amended Order. First, Defendant argues "the doctrine of sovereign immunity bars Plaintiffs' claims," so the trial court should have dismissed Plaintiffs' contract claims. (Capitalization altered.) Second, Defendant argues the trial court should have dismissed the contract claims "pursuant to Rule [of Civil Procedure] 12(b)(6) for failure to plead a claim for breach of contract upon which relief may be granted." Third, in their cross-appeal, Plaintiffs argue to the extent they "have no remedy for breach of contract . . ., then, in the alternative, their *Corum* claims state claims for relief" such that the trial court erred by dismissing

that claim.[3] (Capitalization altered.) We first discuss our jurisdiction to review each of these issues and then discuss the merits.

## A. Appellate Jurisdiction

An appellate court cannot hear an appeal if it does not have jurisdiction, so we must first confirm we have jurisdiction. *See Dogwood Development and Management Co., LLC v. White Oak Transport Co., Inc.*, 362 N.C. 191, 197, 657 S.E.2d 361, 364 (2008) ("It is axiomatic that courts of law must have their power properly invoked by an interested party."); *Bailey v. Gooding*, 301 N.C. 205, 208, 270 S.E.2d 431, 433 (1980) (explaining appellate courts must always ensure they have jurisdiction to hear an appeal); *see also RPR & Associates, Inc. v. State*, 139 N.C. App. 525, 527, 534 S.E.2d 247, 249–50 (2000) (explaining this Court had to "determine whether th[e] appeal [was] properly before" it in a case involving a denial of a motion to dismiss based on sovereign immunity). Generally, appellate courts only have jurisdiction to hear appeals from a final judgment, not from an interlocutory order. *See* N.C. Gen. Stat. § 7A-27 (2021) (permitting appeals as a matter of right to this Court from final judgments and from a limited set of interlocutory orders); *Can Am South, LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014) ("Generally, there is no

---

[3] Plaintiffs refer to multiple *Corum* claims in their appellate briefing, but the Amended Complaint only includes one *Corum* claim. Thus we refer to a singular *Corum* claim during this appeal.

right of immediate appeal from interlocutory orders and judgments." (quoting *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990))); *see also Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381 (1950) (defining final judgment and interlocutory order).

¶ 19     This general rule barring appeals from interlocutory orders has two exceptions:

> First, the trial court may certify that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. N.C.G.S. § 1A–1, Rule 54(b) (1990). Second, a party may appeal an interlocutory order that "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment." *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381; *see also* N.C.G.S. § 1–277 (1996); N.C.G.S. § 7A–27 (1995); *Tridyn Indus., Inc. v. American Mut. Ins. Co.*, 296 N.C. 486, 251 S.E.2d 443 (1979).

*Department of Transp. v. Rowe*, 351 N.C. 172, 174–75, 521 S.E.2d 707, 709 (1999); *see also Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 360, 363, 731 S.E.2d 245, 246–48 (2012) (describing same two exceptions in case related to immunity and state constitutional claims).

¶ 20     Here, as both parties recognize, the Amended Order on Defendant's Motion to Dismiss is an interlocutory order. Since the Order dismissed Plaintiffs' *Corum* claim but not its contract claims, it did not "dispose of the case, but [left] it for further action by the trial court in order to settle and determine the entire controversy." *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381 (so defining an interlocutory order). This Court has

also repeatedly explained, in general, "the denial of a motion to dismiss is not immediately appealable because it is an interlocutory order." *E.g., RPR*, 139 N.C. App. at 527, 534 S.E.2d at 249; *Can Am South*, 234 N.C. App. at 122, 759 S.E.2d at 307. Therefore, we must determine whether either of the exceptions applies to allow us to review each of the parties' issues on appeal. *See Richmond County Bd. of Educ. v. Cowell*, 225 N.C. App. 583, 586, 739 S.E.2d 566, 568–69 (2013) (allowing immediate appeal of sovereign immunity issue but not allowing review of denial of Rule 12(b)(6) motion on separate issue).

### 1. *Sovereign Immunity*

As to Defendant's sovereign immunity argument, we agree with both parties that "an order denying a dismissal motion predicated upon the doctrine of sovereign immunity . . . is immediately appealable 'because it represents a substantial right.'" *State ex rel. Stein v. Kinston Charter Academy*, 379 N.C. 560, 2021-NCSC-163, ¶ 23 (quoting *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 338, 678 S.E.2d 351 (2009)).

"Sovereign immunity protects the State and its agencies from suit absent waiver or consent." *Carl v. State*, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008) (quoting *Wood v. N.C. State Univ.*, 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001)).

Defendant Board of Governors is an agency of the State.[4]  *See* N.C. Gen. Stat. § 116-3 (2021) (establishing the Board "as a body politic and corporate").  As a result, it can claim the protection of sovereign immunity.

¶ 23          The protection of sovereign immunity extends beyond just a mere "defense in a lawsuit"; a "valid claim . . . is in essence immunity from suit."  *RPR*, 139 N.C. App. at 527, 534 S.E.2d at 250.  This characteristic of sovereign immunity explains why our caselaw allows immediate appeal of orders denying motions to dismiss on sovereign immunity grounds.  If the case is "erroneously permitted to proceed to trial, immunity would be effectively lost."  *Doe*, 222 N.C. App. at 364, 731 S.E.2d at 248 (quotations and citations omitted); *see also RPR*, 139 N.C. App. at 527–28, 534 S.E.2d at 250 (explaining ability to lose benefits of immunity means denial of motion to dismiss based on sovereign immunity affects a substantial right).  Because Defendant's loss of the protection provided by sovereign immunity affects a substantial right, we have jurisdiction to hear Defendant's appeal on this issue.

### 2.  Corum *Claim*

¶ 24          As Plaintiffs argue, their *Corum* claim falls under the other exception to the

---

[4] This Court has also previously found the two constituent Universities covered in the Amended Complaint, UNC-CH and NCSU, *see* N.C. Gen. Stat. § 116-4 (2021) (listing constituent universities of the University of North Carolina), are state agencies for the purpose of sovereign immunity.  *Kawai America Corp. v. University of North Carolina at Chapel Hill*, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) (stating UNC-CH "is a state agency to which the doctrine of sovereign immunity applies"); *Wood*, 147 N.C. App. at 338, 556 S.E.2d at 40 (stating "NCSU is a State agency" in a paragraph on sovereign immunity).

bar on interlocutory appeals, Rule of Civil Procedure 54(b) certification. In relevant part, Rule 54(b) allows a trial court to certify for immediate appeal a final judgment on one claim in a multi-claim action:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes.

N.C. Gen. Stat. § 1A-1, Rule 54(b) (2021).

¶ 25 Here, in the Amended Order ruling on Defendant's Motion to Dismiss, the trial court included the following language about the *Corum* claim: "The Court concludes that there is no just reason to delay the appeal of the dismissal of the Corum claim and that Order is hereby certified for immediate appeal." The trial court properly certified the dismissal of the *Corum* claim, so we have jurisdiction to review Plaintiffs' cross-appeal as to the trial court's dismissal of the *Corum* claim.

### 3. *Motion to Dismiss Contract Claims under Rule 12(b)(6)*

¶ 26 Finally, we must consider appellate jurisdiction to review the trial court's denial of Defendant's Motion to Dismiss the contract claims under Rule 12(b)(6). Defendant argues we can also review this issue because it is "inextricably intertwined" with immediately appealable issues. Defendant argues the 12(b)(6)

issue is inextricably intertwined with the sovereign immunity issue because Plaintiffs' argue sovereign immunity has been waived because a contract exists and to assess that argument we "must analyze and determine whether the Amended Complaint sufficiently identifies a valid contract." Defendant also contends the 12(b)(6) issue is inextricably intertwined with the *Corum* issue because: (1) a *Corum* claim is only available when there is no adequate state remedy and the existence of a contract claim is such an adequate remedy; or (2) the constitutional claim underlying Plaintiffs' *Corum* claim is an unconstitutional taking under the Law of the Land Clause and that also requires a valid contract.[5] In the alternative,

---

[5] Defendant technically includes these arguments about the *Corum* issue being inextricably intertwined with the 12(b)(6) issue as a reason we should issue a Petition for Writ of Certiorari ("PWC") to hear the issue of whether Plaintiffs' pleaded a breach of contract claim. This contrasts with Defendant's treatment of the inextricably intertwined nature of the sovereign immunity issue and 12(b)(6) issue where Defendant argued "issues inextricably intertwined with immediately appealable issues may also be immediately appealed."

Our caselaw also has not consistently treated the inextricably intertwined nature of issues on appeal as a reason to grant a PWC as opposed to an additional way to have a right to appeal. *Compare Carl*, 192 N.C. App. at 550, 665 S.E.2d at 793 ("Although the denial of their Rule 12(b)(6) defense is interlocutory, we agree with the State that the issue is inextricably intertwined with the issues before this Court as of right. Accordingly, we grant the Writ of Certiorari and address the State's argument in this appeal.") *with State v. Carver*, 277 N.C. App. 89, 2021-NCCOA-141, ¶ 23 ("[A] right to appeal those other issues exists only if this Court finds those issues 'inextricably intertwined with the issues before this Court as of right.'" (quoting *Carl*, 192 N.C. App. at 550, 665 S.E.2d at 793)).

For the purpose of this discussion, we assume without deciding an issue inextricably intertwined with another issue where there is an appeal of right can also be appealed as a matter of right. If two issues are intertwined such that addressing one addresses the other, *see Carver*, ¶ 24 (summarizing this Court's application of "the 'inextricably intertwined' rule" in *State v. Howard*, 247 N.C. App. 193, 783 S.E.2d 786 (2016) by explaining all three issues were just based on the first issue), it makes little sense to require a party to file a PWC rather

Defendant asks we grant its Petition for Writ of Certiorari ("PWC") to review "all grounds involved in" its Motion to Dismiss.

¶ 27        As Defendant argues, a valid contract is a pre-requisite for each of the three issues in dispute. A valid contract is necessary to waive sovereign immunity. *See Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423–24 (1976) ("[W]henever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract" such that "the doctrine of sovereign immunity will not be a defense to the State."). A valid contract is necessary to survive a motion to dismiss under Rule 12(b)(6) for a contract claim. *E.g. Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000))). And, as relevant to Plaintiffs' claim under *Corum*, a valid contract is required to bring a suit under our state Constitution's Law of the Land Clause because that provides the vested property right the State cannot take without just compensation. *See Adams v. State*, 248 N.C. App. 463, 470, 790 S.E.2d 339, 344 (2016) (although recognizing "vested contractual rights are property and are protected by the Law of

_____

than just having a right to appeal. Still, we need not decide the issue because we grant the PWC on separate grounds.

the Land Clause of our Constitution," rejecting argument because plaintiffs failed to show vested contractual right (citing *Bailey v. State*, 348 N.C. 130, 154, 500 S.E.2d 54, 68 (1998))). Thus, if we agree with Defendant on the merits and find there is not a valid contract, all the issues are linked by this common thread.

¶ 28 But, if we do not agree with Defendant on the validity of the contract, all the issues suddenly become untethered; once there is a valid contract, we could still rule for either side on a separate ground. On the waiver of sovereign immunity, we could still rule for Defendant if a valid implied-in-fact, as opposed to an "express," contract is not sufficient, as Defendant and Plaintiffs contest on the merits and we discuss more below. On the Rule 12(b)(6) ground to dismiss the contract claims, we could still rule for Defendant if Plaintiffs failed to adequately plead breach. *See Montessori Children's House*, 244 N.C. App. at 636, 781 S.E.2d at 514 (requiring "a valid contract and . . . breach"). On the *Corum* claim, we could still rule for Defendant if Plaintiffs have an alternate adequate remedy. *See Taylor v. Wake County*, 258 N.C. App. 178, 183, 811 S.E.2d 648, 652 (2018) ("A *Corum* claim is available to a plaintiff who is able to establish that (1) her state constitutional rights have been violated, and (2) she lacks any sort of 'adequate state remedy.'" (quoting *Corum*, 330 N.C. at 782, 413 S.E.2d at 289)). We should not have to determine part of the merits of a case in this way to determine if we have jurisdiction to reach the merits issues. Thus, the issues are not so inextricably intertwined that jurisdiction over either the sovereign

immunity issue or the *Corum* issue grants us jurisdiction over the Rule 12(b)(6) issue.

At the same time, these links between the issues convince us to grant Defendant's PWC to review the 12(b)(6) issue. As Defendant indicates, our appellate courts can grant a PWC when doing so "will serve the expeditious administration of justice . . . ." *North Carolina Department of Transportation v. Laxmi Hotels of Spring Lake, Inc.*, 259 N.C. App. 610, 618, 817 S.E.2d 62, 69 (2018). Here, once we determine the validity of the contract for sovereign immunity, we have already conducted a major part of the Rule 12(b)(6) analysis, and it would save judicial resources to finish that analysis rather than leave it for review after final judgment in this case when the court may also have to deal with an additional myriad of issues. Therefore, in our discretion, we grant Defendant's PWC to review the trial court's denial of Defendant's Motion to Dismiss the contract claims for failure to state a claim under Rule 12(b)(6).

**B. Sovereign Immunity**

Defendant argues "the doctrine of sovereign immunity bars Plaintiffs' claims." (Capitalization altered.) Specifically, Defendant contends "Plaintiffs have not adequately pled waiver of sovereign immunity" because they have not pled a "valid and express contract" as required. Within this argument, Defendant has two points. First, Defendant argues Plaintiffs fail to plead an express contract. On this point, Plaintiffs respond an express contract is not required because "an implied-in-fact

contract overcomes sovereign immunity" too. Second, Defendant asserts Plaintiffs failed "to allege a [valid] contract." Plaintiffs respond they "pleaded a valid contract implied-in-fact." (Capitalization altered.)

¶ 31        Thus, Defendant's sovereign immunity argument presents us with two issues. As both parties agree, a valid contract can waive sovereign immunity. *Smith*, 289 N.C. at 320, 222 S.E.2d at 423–24. First, we must decide if a valid implied-in-fact contract, as opposed to an express contract, can waive sovereign immunity. Then, if an implied-in-fact contract can waive sovereign immunity, we consider whether Plaintiffs pled a valid implied-in-fact contract sufficient to effect such a waiver. After addressing the standard of review, we discuss each issue in turn.

### 1. *Standard of Review*

¶ 32        Our Supreme Court recently explained an appellate court "reviews a trial court's decision to grant or deny a motion to dismiss based upon the doctrine of sovereign immunity using a de novo standard of review." *State ex rel. Stein*, ¶ 23 (citing *White v. Trew*, 366 N.C. 360, 362–63, 736 S.E.2d 166 (2013)); *see also Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017) ("[Q]uestions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo." (quoting *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016))).

¶ 33        To the extent the question of whether Plaintiffs' pled a valid contract should be reviewed under the standard for orders on motions to dismiss under Rule 12(b)(6), the standard is the same, i.e. de novo.  *See State ex rel. Stein*, ¶ 25 n.2 (explaining standard is the same because "the only factual materials presented for the trial court's consideration were those contained in the complaint"); *see also Wray*, 370 N.C. at 46–47, 802 S.E.2d at 898 (stating appellate courts "review appeals from dismissals under Rule 12(b)(6) de novo" immediately before stating same standard for sovereign immunity (quotations and citations omitted)).  In conducting such a review of the complaint, appellate courts treat as true the complaint's allegations.  *Deminski on behalf of C.E.D. v. State Board of Education*, 377 N.C. 406, 2021-NCSC-58, ¶ 12 ("When reviewing a motion to dismiss, an appellate court considers 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." (quoting *Coley v. State*, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123 (2006))); *see also State ex rel. Stein*, ¶ 25.  An appellate court "is not, however, required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true."  *Estate of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 493, 751 S.E.2d 227, 233 (2013).

### 2. *Whether an Implied-In-Fact Contract Can Waive Sovereign Immunity*

¶ 34        The first issue for our de novo review is whether an implied-in-fact contract can waive sovereign immunity.  "As a general rule, under the doctrine of sovereign

immunity, the State is immune from suit absent waiver of immunity." *Wray*, 370 N.C. at 47, 802 S.E.2d at 898 (quotations, citations, and alterations omitted). But, as we explained above, the State—which includes Defendant Board of Governors, *see* N.C. Gen. Stat. § 116-3 (establishing the Board "as a body politic and corporate")— "waives that immunity when it enters into a valid contract, to the extent of that contract." *Wray*, 370 N.C. at 47, 802 S.E.2d at 899 (citing *Smith*, 289 N.C. at 320, 222 S.E.2d at 423–24 and *Whitfield v. Gilchrist*, 348 N.C. 39, 42–43, 497 S.E.2d 412, 414 (1998)). As such, for contract claims, "[t]he State will occupy the same position as any other litigant." *Smith*, 289 N.C. at 320, 222 S.E.2d at 424.

¶ 35     Our Supreme Court held the State waives its sovereign immunity by entering into a contract based on five "considerations":

> (1) To deny the party who has performed his obligation under a contract the right to sue the state when it defaults is to take his property without compensation and thus to deny him due process;
> (2) To hold that the state may arbitrarily avoid its obligation under a contract after having induced the other party to change his position or to expend time and money in the performance of his obligations, or in preparing to perform them, would be judicial sanction of the highest type of governmental tyranny;
> (3) To attribute to the General Assembly the intent to retain to the state the right, should expedience seem to make it desirable, to breach its obligation at the expense of its citizens imputes to that body 'bad faith and shoddiness' foreign to a democratic government;
> (4) A citizen's petition to the legislature for relief from the state's breach of contract is an unsatisfactory and

> frequently a totally inadequate remedy for an injured
> party; and
> (5) The courts are a proper forum in which claims against
> the state may be presented and decided upon known
> principles.

*Id.*, 289 N.C. at 320, 222 S.E.2d at 423 (spacing altered to start each consideration on a new line).

¶ 36    *Smith* spoke of the waiver of sovereign immunity in broad terms, only requiring a valid contract, in a case where the employment contract was based on statute. *See id.*, 389 N.C. at 309, 320, 222 S.E.2d at 417, 423–24 ("We hold, therefore, that whenever the State of North Carolina, through its authorized officers and agencies, enters into a *valid* contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." (emphasis added)); *see also Data General Corp. v. County of Durham*, 143 N.C. App. 97, 102, 545 S.E.2d 243, 247 (2001) (emphasizing the requirement for a *valid* contract from *Smith*). In the decades since *Smith*, our appellate courts have continued to refine the contours of *Smith*'s sovereign immunity waiver, explaining how it applies, or does not apply, to the "three variations of contract theory." *See Waters Edge Builders, LLC v. Longa*, 214 N.C. App. 350, 353, 715 S.E.2d 193, 196 (2011) (quotations and citation omitted) ("There are at least three variations of contract theory: express contract, contract implied in fact, and contract implied in law." (quotations, citation, and alterations omitted)). The courts have first applied the waiver in cases where there are express,

written contracts.  *See, e.g., Kawai America Corp.*, 152 N.C. App. at 167–68, 567 S.E.2d at 218–19 (recounting complaint allegations about the written terms of the agreement before saying the claim is "based on allegations of contract" so it is not barred by sovereign immunity).

¶ 37        Our caselaw has also clarified contracts implied in law, which are also called quasi contracts and which permit recovery based on *quantum meruit*, do not waive sovereign immunity.  *See Whitfield*, 348 N.C. at 41–42, 497 S.E.2d at 414 (court agreeing with statement "sovereign immunity bars recovery on the basis of *quantum meruit* in an action against the State upon a quasi contract or contract implied in law"); *see also Eastway Wrecker Service, Inc. v. City of Charlotte*, 165 N.C. App. 639, 643, 599 S.E.2d 410, 412 (2004) (affirming dismissal of *quantum meruit* claim "because such a claim when brought against an arm of the State is barred by sovereign immunity").  In *Whitfield*, our Supreme Court explained *Smith* found the State waived sovereign immunity when entering into contracts "*authorized by law*" because in those instances the State is "voluntarily" entering the contract and thereby "authoriz[ing] its liability."  *Whitfield*, 348 N.C. at 42, 497 S.E.2d at 415 (emphasis in original) (quoting *Smith*, 289 N.C. at 322, 222 S.E.2d at 425).  "Furthermore, the State may, with a fair degree of accuracy, estimate the extent of its liability for a breach of contract."  *Id.* (quoting *Smith*, 289 N.C. at 322, 222 S.E.2d at 425).  Based on that reasoning, the *Whitfield* Court was unwilling to "imply a contract in law

where none exists in fact"—since "[a] quasi contract or a contract implied in law is not a contract," *see id.* (quoting *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)) (explaining it would not imply a contract in law after previously discussing a contract in law is not an actual contract)—and "then use that implication to support the further implication that the State has intentionally waived its sovereign immunity and consented to be sued for damages for breach of the contract it never entered in fact." *Id.*, 348 N.C. at 42–43, 497 S.E.2d at 415. As a result, the *Whitfield* Court "conclude[d] that a contract implied in law is insufficient to constitute a waiver of sovereign immunity." *Id.*, 348 N.C. at 40, 497 S.E.2d at 413.

¶ 38        As Defendant highlights, *Whitfield* and other cases from this line around contracts implied in law sometimes include broad language that when read literally, and taken out of context, could also exclude contracts implied in fact from the waiver of sovereign immunity. For example, *Whitfield* says, "Only when the State has implicitly waived sovereign immunity by *expressly* entering into a *valid* contract through an agent of the State expressly authorized by law to enter into such contract may a plaintiff proceed with a claim against the State upon the State's breach." 348 N.C. at 43, 497 S.E.2d at 415 (emphasis in original). Later, *Whitfield* explains, "A contract implied in law—as opposed to an express valid contract—simply will not form a sufficient basis for a court to make a reasonable inference that the State has intended to waive its sovereign immunity." 348 N.C. at 45, 497 S.E.2d at 416. And

in *Eastway Wrecker Service*, this Court stated, "Without both an express contract and a valid contract, the State has not waived its sovereign immunity." 165 N.C. App. at 644, 599 S.E.2d at 413.

¶ 39        But these overly broad statements do not change the fact that *Whitfield* and *Eastway Wrecker Service* concern contracts implied in law *only*. In addition to our above discussion of *Whitfield*'s focus on contracts implied in law, we note the two broad statements still emphasize the need to enter into a *valid* contract and state a contract implied in law is not enough without mention of a contract implied in fact, 348 N.C. at 43, 45, 497 S.E.2d at 415–16, which is a valid contract. *See Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980) (stating, in a paragraph about contracts implied in fact, "An implied contract is valid and enforceable as if it were express or written"); *Sanders v. State Personnel Com'n*, 183 N.C. App. 15, 21, 644 S.E.2d 10, 14 (2007) (explaining *Archer v. Rockingham County*, 144 N.C. App. 550, 548 S.E.2d 788 (2001) established "contracts implied from the facts . . . involve actual contracts").

¶ 40        *Eastway Wrecker Service* likewise was limited to contracts implied in law. First, directly after the statement we pointed out above, this Court explained, "This dual requirement necessarily precludes any recovery in *quantum meruit* against the State . . . ." *Eastway Wrecker Service*, 165 N.C. App. at 644, 599 S.E.2d at 413. And these statements came after the court explained "dismissal of the *quantum meruit*

claim was still appropriate because *such a claim* when brought against an arm of the State is barred by sovereign immunity." *Id.*, 165 N.C. App. at 643, 599 S.E.2d at 412 (emphasis on "such a claim" added). *Eastway Wrecker Service* also distinguished another case, *Archer*, because *Archer* involved a "valid employment contract." 165 N.C. App. at 643, 599 S.E.2d at 413. Notably, *Archer* was a case involving a contract implied in fact. *See Archer*, 144 N.C. App. at 557, 548 S.E.2d at 793 (explaining *Smith*'s "reasoning is equally sound when applied to implied oral contracts"); *Sanders*, 183 N.C. App. at 21, 644 S.E.2d at 14 (explaining *Archer* was referring to contracts implied in fact when it discussed implied contracts by stating "*Archer* establishe[d]" contracts "implied from the facts . . . involve actual contracts").

¶ 41        We conclude *Whitfield* and *Eastway Wrecker Service* only allow the State to defend itself based on sovereign immunity against contracts implied in law, not contracts implied in fact. This conclusion is bolstered by another line of cases holding the State waives its sovereign immunity when it enters into a contract implied in fact. *See Sanders*, 183 N.C. App. at 21, 644 S.E.2d at 14 (stating "even if the existence of a contract must be implied from the circumstances and relationship between the parties, the analysis of *Smith* still applies" before going on to clarify that was a description of "contracts implied from the facts"). This line of cases starts with *Archer*. In that case, this Court explained *Smith* is not limited to express or written contracts because "its reasoning is equally sound when applied to implied oral

contracts." *See* 144 N.C. App. at 557, 548 S.E.2d at 793 (explaining in terms of written contracts shortly after saying contracts in the employment context at issue in the case "may be express or implied"). *Archer* then defined an "implied contract" as "an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." *Id.*

¶ 42 In *Sanders*, this Court further explained *Archer*. First, the *Sanders* Court clarified *Archer* was referring to contracts implied in fact when it discussed implied contracts. *See* 183 N.C. App. at 21, 644 S.E.2d at 14 (explaining *Archer* established "contracts implied from the facts . . . involve actual contracts"). In that case, the defendants "confused contracts implied from the facts—which, as *Archer* establishes, involve actual contracts—with contracts implied in law, which do not involve a contract." *Id.* After that explanation of the difference, *Sanders* clarified cases including *Whitfield* and *Eastway Wrecker Service* only applied to contracts implied in *law* and thus had no bearing on the question of whether a contract implied in *fact* waived sovereign immunity. *See id.*, 183 N.C. App. at 21–22, 644 S.E.2d at 14 (stating *Whitfield* "is inapposite" because it involved a contract implied in law whereas the instant case involved "an actual employment contract" before also citing *Eastway Wrecker Service*).

¶ 43 And since *Sanders*, this Court has continued to apply *Smith*'s sovereign immunity waiver to contracts implied in fact. For example, in *Lake v. State Health*

*Plan for Teachers and State Employees*, this Court rejected the defendants' argument their Rule 12(b)(2) motion based on sovereign immunity "should have been granted because [the p]laintiffs failed to allege an express agreement" on the grounds that, as in *Sanders*, the plaintiffs alleged "something 'in the nature of a contractual obligation' which would still amount to a valid contract under *Archer*." 234 N.C. App. 368, 371, 374, 760 S.E.2d 268, 271, 273 (2014) (quoting *Sanders*, 183 N.C. App. at 21, 644 S.E.2d at 13)).

¶ 44        Defendant argues these cases do not apply here because they all arise from the "employment context" where "there is no doubt that the governmental entity intentionally employed the complainant and that a contract of some sort exists." (Emphasis in original.)  By contrast, according to Defendant, "[i]n the educational context . . . the relationship between school and student is not inherently contractual." (Emphasis in original.)  While in its briefing Defendant never identified what relationship exists between school and student if not a contractual one, at oral argument Defendant said the relationship is statutory in nature.  Defendant pointed us to provisions in North Carolina General Statute § 116-143 requiring Defendant to "fix the tuition and fees, not inconsistent with the actions of the General Assembly . . . in such amount or amounts as it may deem best . . .," with each constituent institution collecting them from students, and prohibiting "the giving of tuition and fee waivers, or especially reduced rates," at least to the extent this "represent[s] in

effect a variety of scholarship awards, . . . except when expressly authorized by statute." N.C. Gen. Stat. § 116-143 (a), (c) (2019). Defendant's argument does not persuade us.[6]

¶ 45    Defendant is correct the cases extending *Smith* to implied in fact contracts are all from the employment context. *See Archer*, 144 N.C. App. at 552, 548 S.E.2d at 790 ("[T]he County has waived any immunity it had by entering into an implied employment contract with the EMTs."); *Sanders*, 183 N.C. App. at 19, 644 S.E.2d at 13 ("In the amended complaint, plaintiffs allege that the State entered into employment contracts with the plaintiffs, incorporating state personnel regulations . . . ."); *Lake*, 234 N.C. App. at 371, 760 S.E.2d at 271 ("Plaintiffs pled that they each had a contract of employment with the State . . . ."). But the reasoning of those cases extends beyond the employment context. Those cases turned on the similarities of express and implied in fact contracts and how, as a result, the reasoning of *Smith* applied equally to implied in fact contracts. *See Archer*, 144 N.C. App. at 557, 548 S.E.2d at 793 (discussing difference between express and implied contracts and then stating, "We do not limit *Smith* to written contracts; its reasoning is equally sound

---

[6] Defendant also cites a decision from the U.S. District Court in Maryland that, according to it, "rejected arguments identical to Plaintiffs' arguments in this case and dismissed the students' contract claims." (Citing *Student "A" v. Hogan*, 513 F. Supp. 3d 638, 645 (D. Md. 2021).) But Defendant indicates the court's decision turned on Maryland's requirement of a written contract for a waiver of sovereign immunity, and our caselaw, as discussed above, does not contain any such limitation.

when applied to implied oral contracts"); *Sanders*, 183 N.C. App. at 21–22, 644 S.E.2d at 14 (explaining, "In short, even if the existence of a contract must be implied from the circumstances and relationship between the parties, the analysis of *Smith* still applies" before rejecting the defendants' arguments because "contracts implied from the facts . . . involve actual contracts"); *Lake*, 234 N.C. App. at 372, 374, 760 S.E.2d at 272–73 (emphasizing *Archer*'s language about *Smith* applying equally to implied contracts and then relying on *Archer* and *Sanders* to find the plaintiffs survived a motion to dismiss based on sovereign immunity because they "alleged something 'in the nature of a contractual obligation'" (quoting *Sanders*, 183 N.C. App. at 21, 644 S.E.2d at 13).

¶ 46        Contrary to Defendant's argument, the employment context and the educational context are not so different that we can disregard the cases addressing contracts implied in fact in the employment context. *See Archer*, 144 N.C. App. at 552, 548 S.E.2d at 790; *Sanders*, 183 N.C. App. at 19, 644 S.E.2d at 13; *Lake*, 234 N.C. App. at 371, 760 S.E.2d at 271. In the employment cases, an employee agrees to work for the employer, and the employer agrees to pay the employee; based upon these facts, the terms of the implied contract are clear, even without an express written contract. In the educational context, as alleged by Plaintiffs' Amended Complaint, the educational institutions agreed to accept and enroll the students, and the students have agreed to pay certain fees for particular services to be provided as

part of the educational program. The parameters of the alleged implied contract are quite clear, and as noted by the *Whitfield* Court, "the State may, with a fair degree of accuracy, estimate the extent of its liability for a breach of contract." 348 N.C. at 42, 497 S.E.2d at 415 (quoting *Smith*, 289 N.C. at 322, 222 S.E.2d at 425).

¶ 47        Extending *Archer* and its progeny beyond the employment context is consistent with our treatment of implied in fact contracts in general. Our Supreme Court has long held "[a]n implied [in fact] contract is valid and enforceable as if it were express or written." *See Snyder*, 300 N.C. at 217, 266 S.E.2d at 602 (stating in a paragraph about contracts implied in fact). "Except for the method of proving the fact of mutual assent, there is no difference in the legal effect of express contracts and contracts implied in fact." *Creech v. Melnik*, 347 N.C. 520, 526–27, 495 S.E.2d 907, 911 (1998) (citing *Snyder*, 300 N.C. at 217, 266 S.E.2d at 602). And that difference in the method of proving mutual assent has no effect at this pleading stage of proceedings. "Whether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact." *Snyder*, 300 N.C. at 217, 266 S.E.2d at 602 (citing *Storey v. Stokes*, 178 N.C. 409, 100 S.E. 689 (1919) and *Devries v. Haywood*, 64 N.C. 83 (1870)). At the pleading stage, "consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are sufficient to establish a waiver by the State of sovereign immunity." *Can Am South*, 234 N.C. App. at 126, 759 S.E.2d at 310 (quoting *Fabrikant v. Currituck Cnty.*, 174 N.C. App.

30, 38, 621 S.E.2d 19, 25 (2005)); *see also Smith*, 289 N.C. at 322, 222 S.E.2d at 424 (noting the court had "no knowledge, opinion, or notion as to what the true facts" were and those would be established later).

¶ 48 In a similar vein, this Court has defined an "implied in fact contract" as "an agreement between parties, but the terms of the agreement have not been fully expressed in words and, instead, are established by the parties' conduct." *Thompson-Arthur Paving Co., a Div. of APAC-Carolina, Inc. v. Lincoln Battleground Associates*, 95 N.C. App. 270, 280, 382 S.E.2d 817, 823 (1989). The terms of a contract implied in fact are also "questions for the trier of fact" because mutual assent covers "the terms of the agreement so as to establish a meeting of the minds" based on "the actions of the parties showing an implied offer and acceptance." *See Snyder*, 300 N.C. at 217–18, 266 S.E.2d at 602 (so explaining after saying mutual assent is a question for the trier of fact). Again, the trier of fact plays no role at the pleading stage. *See Smith*, 289 N.C. at 322, 222 S.E.2d at 424 (leaving question of "true facts" for later trial).

¶ 49 As noted above, at oral argument Defendant also proposed an alternative classification of the relationship between the student and university as it relates to fees as a statutory relationship but not a form of contract. To the extent we can even review this contention raised for the first time at oral argument, *see* N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several

briefs. Issues not presented and discussed in a party's brief are deemed abandoned."), we reject Defendant's alternative classification of the relationship between the student and university as it relates to fees as statutory. First, Defendant did not submit any caselaw or other authority defining the concept of a statutory relationship.[7] Further, the statutory requirements for Defendant to set fees to be collected from students and not waive them except when authorized by statute, *see* N.C. Gen. Stat. § 116-143(a), (c), do not create any particular relationship between students and the University of North Carolina system. Under the statute, Defendant must require students to pay certain fees to be able to enroll. *Id.*, § 116-143(a). And one of the most basic forms of contract is an agreement for one party to pay money to another party in return for some form of goods or services.

¶ 50 Finally, the General Assembly envisioned Defendant could be sued for this type of claim because it passed a statute granting "institution[s] of higher education . . . immunity" from claims related to "tuition or fees paid" for the Spring 2020 semester when the claim is based on "an act or omission" related to COVID-19. N.C. Gen. Stat. § 116-311 (eff. 1 July 2020). There would be no need for this separate immunity statute if the General Assembly believed sovereign immunity already

---

[7] Defendant also did not submit any additional authorities, which "may be brought to the attention of the court by filing a memorandum thereof" even after a party has filed its briefing. N.C. R. App. P. 28(g).

prevented such a claim.

¶ 51     Thus, we conclude a contract implied in fact can waive sovereign immunity under the contractual waiver holding in *Smith*. As a result, we must determine whether Plaintiffs here, who rely on such a contract, sufficiently pled such waiver.

### 3. *Whether Plaintiffs Pled a Valid Implied-In-Fact Contract*

¶ 52     Beyond arguing an implied-in-fact contract cannot waive sovereign immunity, Defendant asserts Plaintiffs failed "to allege a [valid] contract." Defendant initially makes a general argument "[e]ducational law in North Carolina is inconsistent with implied-in-fact contracts." Defendant then has three specific reasons in support of this argument. First, Defendant argues Plaintiffs pled "there was no meeting of the minds" because they allege they "were told prior to the start of the semester that the fees would not be refunded in the event the mode of instruction changed." Second, Defendant contends a meeting of the minds did not occur because Plaintiffs alleged "the fees were paid in exchange for the right to enroll and remain in good standing, rather than the right to obtain services." Third, Defendant asserts Plaintiffs failed to plead Defendant promised any services and "[e]very contract requires a promise."

¶ 53     An allegation of a valid contract matters because "when the plaintiff pleads a contract claim" a waiver of sovereign immunity is "effectively alleged." *See Wray*, 370 N.C. at 47–48, 802 S.E.2d at 898–99 (stating in terms of governmental immunity after defining governmental immunity as "that portion of the State's sovereign

immunity which extends to local governments"); *see also Fabrikant*, 174 N.C. App. at 38, 621 S.E.2d at 25 ("[A]s long as the complaint contains sufficient allegations to provide a reasonable forecast of waiver, precise language alleging that the State has waived the defense of sovereign immunity is not necessary."); *Can Am South*, 234 N.C. App. at 126, 759 S.E.2d at 310 (holding the plaintiff "sufficiently pleaded waiver of [the] defendants' sovereign immunity" because they pleaded "their entry into three facially valid contracts"). Our system of notice pleading means the bar to plead a valid contract is "low." *Wray*, 370 N.C. at 50, 802 S.E.2d at 900 (explaining there is a "low bar for notice pleading under Rule 12(b)(6), as well as the waiver of governmental immunity that is inferred from the pleading of a contract claim").

¶ 54    While our caselaw does not explicitly set out the requirements to plead a valid implied in fact contract,[8] we can use the pleading requirements for an express contract as a starting point because an implied in fact contract "is valid and enforceable as if it were express or written." *See Snyder*, 300 N.C. at 217, 266 S.E.2d at 602 (so stating in terms of "implied contract" and then clarifying in the next

---

[8] None of *Archer*, *Lake*, or *Sanders* involved an argument on the nuances of whether the plaintiff pled a valid contract implied in fact. *See Lake*, 234 N.C. App. at 374, 760 S.E.2d at 273 (determining the plaintiffs had sufficiently "alleged something in the nature of a contractual obligation" without going into further detail (quotations and citation omitted)); *Sanders*, 183 N.C. App. at 20, 644 S.E.2d at 13 (rejecting the defendants arguments that the "alleged contract" was not valid because they went "to the merits of plaintiffs' breach of contract claim").

sentence court meant implied-in-fact contract). For an express contract, "[t]he 'elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms.'" *Society for Historical Preservation of Twentysixth North Carolina Troops, Inc. v. City of Asheville*, 2022-NCCOA-218, ¶ 30 (quoting *Se. Caissons, LLC v. Choate Const. Co.*, 247 N.C. App. 104, 110, 784 S.E.2d 650, 654 (2016) (in turn citing *Snyder*, 300 N.C. at 218, 266 S.E.2d at 602)). *Snyder* explains "mutual assent . . . is normally accomplished through the mechanism of offer and acceptance," thereby rolling the last element into the first two, and for "a contract implied in fact, one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance." 100 N.C. at 218, 266 S.E.2d at 602. Thus, to plead a valid implied-in-fact contract, Plaintiffs needed to plead offer, acceptance, and consideration.

¶ 55        Looking at the Amended Complaint, Plaintiffs properly pled each of those three elements. On offer, the Amended Complaint alleges the constituent institutions "offered Plaintiffs and members of the" pertinent classes the "services, benefits, and opportunities" listed and billed to them as student fees and "offered to sell optional parking permits . . . which would permit the purchaser to park a motor vehicle in an on-campus parking lot during the Fall 2020" Term. As to acceptance, the Amended Complaint alleges "Plaintiffs and class members accepted Defendant's offer and agreed to pay, and did, in fact, pay, the Student Fees" for the listed services and

Plaintiffs and "certain other Fall 2020 Term students accepted" the offer to purchase parking permits. These allegations are based on earlier pleaded facts laying out the specific student fees and their amount, services, benefits, and purposes as the constituent institutions "represented in writing on their respective websites and in written communications to each student" as well as that Plaintiffs and the proposed class members had accepted the offer for such services and paid the fees for the Fall 2020 semester. The Amended Complaint includes a similar prior explanation of the parking fees allegation.

¶ 56        Finally, Plaintiffs properly pled consideration because those allegations detail an exchange of money (i.e. the fees) for "services, benefits, and opportunities" or a parking permit. *See, e.g., Elliott v. Enka-Candler Fire and Rescue Dept., Inc.*, 213 N.C. App. 160, 163, 713 S.E.2d 132, 135 (2011) ("Consideration sufficient to support a contract consists of 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.'" (quoting, *inter alia, Brenner v. School House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981))). Thus, Plaintiffs adequately pled a valid contract implied in fact.

¶ 57        None of Defendant's arguments persuade us Plaintiffs failed to plead a valid, implied-in-fact contract. As to Defendant's general argument contracts implied in fact cannot exist in the educational context, Defendant only cites two binding cases and neither one states or even implies support for its argument. (Citing *Ryan v.*

*University of North Carolina Hospitals*, 128 N.C. App. 300, 302, 494 S.E.2d 789, 791 (1998) and *Montessori Children's House*, 244 N.C. App. 633, 781 S.E.2d 511). *Ryan* was a case about contract claims challenging the "general quality of [an] educational program" and held only one aspect of the written contract in that case could survive dismissal because it "would not involve an inquiry into the nuances of educational processes and theories." 128 N.C. App. at 301–03, 494 S.E.2d at 790–91. To the extent *Ryan* stated the plaintiff had to "point to an identifiable contractual promise that the University failed to honor," it did so in the context of explaining how courts generally disfavor claims about the "general quality of the educational program." *Id.*, 128 N.C. App. at 302, 494 S.E.2d at 791. Here, Plaintiffs' claims are not about the quality of the educational program.

¶ 58     *Montessori Children's House* also involved a written contract, and this Court upheld the trial court's ruling because statements on the school's webpage were not "expressly incorporated by reference" into the written contract with the school. 244 N.C. App. at 634, 641–42, 781 S.E.2d at 513, 517. Here, there was no written contract, so the statements on the school websites to which Plaintiffs point could not have been incorporated into one. Thus, we are not persuaded by Defendant's general argument.

¶ 59     Turning to Defendant's specific arguments, we are similarly unconvinced. Defendant's first two specific arguments—that there was no meeting of the minds

because the students "were told prior to the start of the semester that the fees would not be refunded in the event the mode of instruction changed" and because Plaintiffs alleged the fees were paid in exchange for enrollment, not services—suffer from a common flaw. Both arguments challenge whether there was a meeting of the minds, but that question is left for the trier of fact, as we explained above. *See Snyder*, 300 N.C. at 217–18, 266 S.E.2d at 602 (explaining, "[w]hether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact" before going on to equate mutual assent to a meeting of the minds). As a result, it will be for the trier of fact to determine on what terms there was a meeting of the minds and thus what terms are included in the alleged contract on which Plaintiffs will ultimately need to demonstrate breach to prevail. We do not express any opinion on that merits question at this stage; we only decide Plaintiffs have validly pled a contract sufficient to waive sovereign immunity. *See Can Am South*, 234 N.C. App. at 127, 759 S.E.2d at 310 ("This Court has consistently held that we are not to consider the merits of a claim when addressing the applicability of sovereign immunity as a potential defense to liability." (citing *Archer*, 144 N.C. App. at 558, 548 S.E.2d at 793 and *Smith*, 289 N.C. at 322, 222 S.E.2d at 424)); *see also Wray*, 370 N.C. at 50, 802 S.E.2d at 900 ("Although we hold that dismissal of the complaint was not warranted, like the Court of Appeals, we express no opinion on the merits of [the] plaintiff's contract action.").

¶ 60    We further note Plaintiffs specifically pled a meeting of the minds, at least as to student fees:

> There was a meeting of the minds between Plaintiffs and the Class Members on the one hand, and UNC on the other hand, on this point: Plaintiffs and the Class Members paid their Fall Term 2020 Student Fees in full, and, in return, UNC promised to provide to Plaintiffs and the Class Members the benefits, services, and opportunities of the Earmarked Components in full for the duration of the Fall 2020 Terms.

Although the allegation of the meeting of the minds is sufficient at this stage, ultimately whether there was a meeting of the minds is a question for the trier of fact. *Snyder*, 300 N.C. at 217–18, 266 S.E.2d at 602.

¶ 61    Defendant finally argues Plaintiff failed to plead Defendant promised any services and "[e]very contract requires a promise." We cannot reconcile Defendant's argument with the allegations in the Amended Complaint because Plaintiffs repeatedly included pleadings about promises for services. For example, as to each Plaintiff, the Amended Complaint lists "specific categories of services and benefits" they were "entitled" to receive from the university by providing the student fees, which were broken down in various listed categories. Further, the Amended Complaint specifically states:

> Further, before the beginning of their respective Fall 2020 Terms, NCSU and UNC-CH provided each student enrolled for their Fall 2020 Terms, including Plaintiffs, an itemized bill which labeled, in writing, the services,

> benefits, and opportunities which NCSU and UNC-CH *promised* to provide in exchange for each student's, including each Plaintiff's, payment of Fall 2020 Term Student Fees; those bills also specified the amount that each Plaintiff and each other NCSU and UNC-CH student was required to pay for those services, benefits, and opportunities.

(Emphasis added.) As to the parking fees, the Amended Complaint alleges Plaintiffs and other students in the proposed class purchased "optional motor vehicle parking permits, which permitted the purchasers to park their motor vehicle[s]" in the constituent Universities' "convenient on-campus parking lots."

¶ 62 Defendant argues these were not enough because the Amended Complaint included "no specific statements in any university documents or communications that ever promised" these fees would be used for these purposes and the referenced "websites and billing information" do not support a contract on their own and were not incorporated into any such contract relying on *Montessori Children's House*. We have already explained how that case is not applicable here because it involved a situation where there was a separate written contract. Here, the specific billing statements, lists of fees, etc. do not need to be specifically incorporated into a contract because Plaintiffs allege they are the contract. While the fees do not specifically say Defendant or the constituent Universities promise to do anything, Plaintiffs' contention is, in essence, the circumstances and relationship they had with the institutions meant a contract could be implied. That is a contract implied in fact, *e.g.*

*Sanders*, 183 N.C. App. at 21, 644 S.E.2d at 14, and Plaintiffs did not need to plead anything further.

¶ 63        We therefore conclude Plaintiffs adequately pled a valid contract implied in fact. Because a valid contract implied in fact waives sovereign immunity, we hold, after our de novo review, Plaintiffs properly pled such a waiver and the trial court did not err in denying Defendant's motion to dismiss on the grounds of sovereign immunity.

**C. Motion to Dismiss under Rule 12(b)(6) as to Contract Claims**

¶ 64        In its final argument in its appeal from the Amended Order, Defendant contends the trial court erred by not dismissing the contract claims "pursuant to Rule [of Civil Procedure] 12(b)(6) for failure to plead a claim for breach of contract upon which relief may be granted." Specifically, Defendant argues "Plaintiffs do not allege that any of the services for which the fees were purportedly charged stopped when the institutions changed the mode of instruction" and they "fail[ed] to identify *any* instance where they requested a service and were denied" such that their claims "are speculative at best." (Emphasis in original.)

### 1. *Standard of Review*

¶ 65        An appellate court "reviews de novo a trial court's order on a motion to dismiss." *Deminski*, ¶ 12. "When reviewing a motion to dismiss, an appellate court considers 'whether the allegations of the complaint, if treated as true, are sufficient

to state a claim upon which relief can be granted under some legal theory." *Id.*

(quoting *Coley*, 360 N.C. at 494–95, 631 S.E.2d at 123); *see also State ex rel. Stein*, ¶

25. When conducting that analysis:

> "the allegations of the complaint must be viewed as
> admitted, and on that basis the court must determine as a
> matter of law whether the allegations state a claim for
> which relief may be granted." *Davis v. Hulsing Enterprises,
> LLC*, 370 N.C. 455, 457, 810 S.E.2d 203 (2018) (quoting
> *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611
> (1979)). N.C.G.S. § 1A-1, "Rule 12(b)(6), generally
> precludes dismissal except in those instances where the
> face of the complaint discloses some insurmountable bar to
> recovery." *Newberne v. Dep't of Crime Control & Pub.
> Safety*, 359 N.C. 782, 784, 618 S.E.2d 201 (2005) (quoting
> *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*,
> 351 N.C. 331, 337, 525 S.E.2d 441 (2000)) (cleaned up).

*State ex rel. Stein*, ¶ 25. Applying this standard of review, we must determine if

Plaintiffs adequately pled their contract claims to survive a Rule 12(b)(6) motion.

### 2. *Pleading of Breach*

Since we have already determined above Plaintiffs pled a valid contract, we

only need to address whether Plaintiffs adequately pled breach to address the trial

court's Rule 12(b)(6) ruling. *See Montessori Children's House*, 244 N.C. App. at 636,

781 S.E.2d at 514 (listing elements of breach of contract claim as "(1) existence of a

valid contract and (2) breach of the terms of that contract"). We determine Plaintiffs

properly pled breach of the contract.

As to the student fees claim, Plaintiffs pled the Universities "voluntarily and

permanently stopped, or severely curtailed providing many of the services, benefits, and opportunities" that they allege were promised in return for many of the student fees and those conditions "persisted for the duration of the Fall 2020 Term." One example is illustrative. Plaintiffs allege both Universities charged them a student health fee, and then allege the Universities "curtailed student health services and advised Fall 2020 Term students that they should obtain health services from private health providers and not from the student health services which were paid for in the Fall 2020 Term Student Fees." In more general terms, Plaintiffs allege they paid for a service and then the other party to the alleged contract did not allow them to access that service. Taking the alleged facts as true, as we must at this stage, *State ex rel. Stein*, ¶ 25, Plaintiffs have properly alleged breach.

¶ 68        Turning to the parking fees claim, Plaintiffs allege they paid for parking permits that allowed them to park in the Universities' "convenient on-campus parking lots" and they were not "properly rebated those permit fees" after they were "evicted . . . from on-campus housing" and the Universities cancelled in-person, on-campus instruction. Specifically, they allege their removal from on-campus housing and lack of on-campus instruction "rendered worthless those on-campus parking passes." The Amended Complaint also includes additional allegations on the precise amount of damages Plaintiffs and the proposed classes they represent would be seeking based on rebates provided by the Universities. Again, Plaintiffs have pled

they paid for a service and the constituent institutions took actions that prevented them from using those services, at least the same way they would have had campus been open as normal.

¶ 69        Defendant's only argument is Plaintiffs failed to identify "*any* instance where they requested a service and were denied," so their claims "are speculative at best." (Emphasis in original.)  This argument does not conform with how a reasonable person would act.  Taking the same student health fee example from above, Defendant is correct the Plaintiffs do not allege they tried to access student health services after being advised "they should obtain health services from private health providers and not from the student health services," but requiring Plaintiffs to go to student health just to get denied services per the previous communication would make little sense.  Further, Plaintiffs allege in past terms they and other students "had regularly used the services and had enjoyed the services, benefits, and opportunities" each of the student fees allegedly provided, and, as a result, they "would have continued to use and enjoy the services, benefits, and opportunities." Likewise, on-campus parking would be of no use to students who are not allowed either to attend class on campus or to live on campus.

¶ 70        The only two cases Defendant cites in support of this proposition, *Estate of Vaughn*, 230 N.C. App. at 493, 751 S.E.2d at 233 and *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013), are of no help to its argument.

Defendant appears to cite *Estate of Vaughn* for the proposition an appellate court "is not . . . required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true." 230 N.C. App. at 493, 751 S.E.2d at 233. Similarly, *McCrann*'s main point in the relevant section is an appellate court "may ignore plaintiffs' legal conclusions" when reviewing a motion to dismiss on Rule 12(b)(6) grounds. 225 N.C. App. at 377, 737 S.E.2d at 777. While we agree with both of these statements of law, they do not change our conclusion here. Focusing only on the non-conclusory factual allegations, Plaintiffs adequately allege a breach even though they do not specifically say they explicitly asked for and then were denied services; according to the allegations, they paid for services and then Defendant barred them from accessing such services. Defendant cites no case law supporting their argument a pleading fails to state a claim for breach of contract if the breaching party tells the non-breaching party it cannot engage in the contracted service and the non-breaching party takes the breaching party at its word.

¶ 71 After our de novo review, the trial court did not err in denying Defendant's motion to dismiss Plaintiffs' contract claims for failure to state a claim under Rule 12(b)(6).

**D. *Corum* Claim**

¶ 72 Turning to Plaintiffs' cross-appeal, they argue "to the extent" they "have no remedy for breach of contract to recover student fees or parking fees, then, in the

alternative, their *Corum* claims state claims for relief." (Capitalization altered.) Specifically, Plaintiffs argue they properly pled a constitutional claim under the Law of the Land Clause in Article I, § 19 of our Constitution because they allege a vested property interest arising from the contract with Defendant and that the constituent institutions took that interest when they accepted Plaintiffs' money but did not provide services or a refund.[9] Plaintiffs acknowledge their *Corum* claim and contract claims "are mutually exclusive—the *Corum* claim[] exist[s] only if the contract claims are not viable."

### 1. *Standard of Review*

¶ 73        As both parties agree, Defendant moved to dismiss Plaintiffs' *Corum* claim based on Rule 12(b)(6) for failure to state a claim. As a result, we apply the same de novo standard of review we applied above to Defendant's argument Plaintiffs' failed

---

[9] Plaintiffs also argue "but for sovereign immunity" they "would have valuable choses-in-action against Defendant for the tort of conversion or unjust enrichment; a chose-in-action is a constitutionally protected property." (Capitalization altered.) The Amended Complaint only includes a conclusory allegation Plaintiffs would have those claims absent sovereign immunity; it does not detail the facts necessary to show Defendant committed either tort nor does it explain those claims would give rise to a constitutionally protected property right. We are not required to accept such a conclusory allegation as true, *Estate of Vaughn*, 230 N.C. App. at 493, 751 S.E.2d at 233, and even if we were, the Amended Complaint still does not say these claims could be transformed into a valid constitutional claim. This failure to plead a valid constitutional claim based on these grounds is fatal to Plaintiffs' *Corum* claim based on these grounds because a valid *Corum* claim requires establishing "state constitutional rights have been violated." *Taylor*, 258 N.C. App. at 183, 811 S.E.2d at 652. Even if that were not the case, we would also affirm the trial court's dismissal of this part of Plaintiffs' *Corum* claim because Plaintiffs have an adequate state remedy via the contract claims, as we discuss in more detail below.

to state contract claims. *Deminski*, ¶ 12 (explaining an appellate court "reviews de novo a trial court's order on a motion to dismiss" and "considers 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory'" (quoting *Coley*, 360 N.C. at 494–95, 631 S.E.2d at 123)); *Carl*, 192 N.C. App. at 555, 665 S.E.2d at 796 (when reviewing the dismissal of a *Corum* claim stating, "In reviewing a trial court's Rule 12(b)(6) dismissal, the appellate court must inquire whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." (quoting *Newberne*, 359 N.C. at 784, 618 S.E.2d at 203)).

### 2. *Viability of* Corum *Claim*

As this Court recently explained:

> A *Corum* claim allows a plaintiff to recover compensation
> for a violation of a state constitutional right for which there
> is either no common law or statutory remedy, or when the
> common law or statutory remedy that would be available
> is inaccessible to the plaintiff. By allowing an otherwise
> common law or statutory claim to proceed as a direct
> constitutional claim, the North Carolina Supreme Court
> fashioned an avenue to bypass certain defenses such as
> sovereign or governmental immunity. A *Corum* claim is
> available to a plaintiff who is able to establish that (1) her
> state constitutional rights have been violated, and (2) she
> lacks any sort of "adequate state remedy." *Corum*, 330 N.C.
> at 782, 413 S.E.2d at 289.

*Taylor*, 258 N.C. App. at 183, 811 S.E.2d at 652. Our Supreme Court has explained

"to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id.*, 258 N.C. App. at 184, 811 S.E.2d at 653 (quoting *Craig*, 363 N.C. at 339–40, 678 S.E.2d at 355). A remedy must also address "the alleged constitutional injury" to be considered adequate. *Id.*, 258 N.C. App. at 185, 811 S.E.2d at 654 (citing *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 789, 688 S.E.2d 426, 429 (2010)). This second requirement means "a plaintiff must be allowed to pursue claims for the same alleged wrong under both the constitution and state law where one could produce only equitable relief and the other could produce only monetary damages, thus 'complet[ing] [the plaintiff's] remedies[.]'" *Carl*, 192 N.C. App. at 555–56, 665 S.E.2d at 796 (alterations in original) (quoting *Corum*, 330 N.C. at 789, 413 S.E.2d at 294).

¶ 75        Here, as Plaintiffs recognize when they argue "the *Corum* claims exist only if the contract claims are not viable," Plaintiffs fail to state a *Corum* claim because they do not lack an adequate state remedy; they have the contract claims we addressed above. Since above we found sovereign immunity did not bar the Plaintiffs' contract claims, they can "enter the courthouse doors and present [their] claim." *Taylor*, 258 N.C. App. at 184, 811 S.E.2d at 653. Further, the remedy for those contract claims, namely money damages, is identical to the Plaintiffs' requested remedy for the alleged constitutional violation as part of the *Corum* claim, so the contract claims redress "the alleged constitutional injury. *Id.*, 258 N.C. App. at 185, 811 S.E.2d at

654; *see Carl*, 192 N.C. App. at 555–56, 665 S.E.2d at 796 (explaining a *Corum* claim and another state law claim can co-exist if one provides equitable relief and the other provides only monetary damages).

¶ 76        This case resembles *Carl*. There, the plaintiffs, on behalf of a proposed class, sued the State Health Plan for an alleged breach of a contractual obligation to not raise insurance premiums unless certain specific requirements were met, and they added a claim based on Article I, § 19 of our Constitution because taking away the same contractual right amounted to an unconstitutional taking without just compensation. 192 N.C. App. at 545–46, 665 S.E.2d at 790–91. This Court held sovereign immunity did not bar the contract claims. *See id.*, 192 N.C. App. at 555, 665 S.E.2d at 796 (stating in the section on the *Corum* claim "we have concluded that sovereign immunity does not bar [the p]laintiffs' breach of contract claim"). Then, because the breach of contract claim would "vindicate the same rights as their constitutional argument, . . . namely, monetary damages," this Court held the plaintiffs had "an adequate alternative remedy under state law" such that their "takings claim under N.C. Constitution Article I, Section 19 should have been dismissed." *Id.*, 192 N.C. App. at 556, 665 S.E.2d at 797 (quotations, citations, and alterations omitted). Faced with identical types of claims here and also determining sovereign immunity does not bar Plaintiffs' contract claims, we similarly hold Plaintiffs have an "adequate alternative remedy under state law" so their *Corum*

claim based on Article I, § 19 of our Constitution should be dismissed. *Id.* Therefore, after our de novo review, the trial court did not err by dismissing Plaintiffs' *Corum* claim.

## III.  Conclusion

¶ 77       Having reviewed both the appeal and cross-appeal, we affirm. We first determine we have appellate jurisdiction over the sovereign immunity issue related to the contract claims because it affects a substantial right, over the *Corum* issue because of the trial court's Rule of Civil Procedure 54(b) certification, and over the Rule 12(b)(6) issue related to the contract claims because we grant Defendant's PWC as to that issue. Turning to the merits, the trial court properly denied Defendant's Motion to Dismiss the contract claims on sovereign immunity grounds because Plaintiffs adequately pled a valid implied-in-fact contract and such a contract can waive sovereign immunity. The trial court also properly denied the Motion as to the contract claims on 12(b)(6) grounds because Plaintiffs' Amended Complaint properly pleads breach of contract claims. Finally, the trial court correctly granted the Motion to Dismiss Plaintiffs' *Corum* claim because Plaintiffs' contract claims are an adequate alternative remedy.

AFFIRMED.

Judges DILLON and JACKSON concur.