R. G. LEWIS, surviving partner, v. W. D. ROUNTREE & Co.

*Vendor and Vendee—Action for Breach of Warranty—Measure of Damages—Interest.*

1. A vendee who takes a warranty and gives notice that he buys to sell again in another market may include in his damages both the losses he actually sustains by reason of a breach of the warranty, and also the profits he would have made upon resale, had the article been what it was represented to be.

2. In an action for breach of warranty, where it appeared that the plaintiff purchased certain rosin from the defendants at Wilson N. C. to be sold by him in some other market than Wilson, *of which defendants had notice,* and the rosin failed to come within the description warranted; *It was held,*

(1) That the contract of defendants was to deliver the rosin at any usual market to be named by the purchaser, the purchaser taking on himself the risk, trouble and expense of the transportation.

(2) That the knowledge by the vendor of the purpose which the vendee had in view in making the purchase, was an essential element in estimating the damages likely to be sustained by a breach of warranty.

(3) That in such case, the only just measure of damages is the difference between what the rosin would have sold for *in a reasonable time* after its purchase in the market which the plaintiff had by the circumstances of the contract a right to select, and did select (New York), if it had been what it was warranted to be, and the sum it did actually sell for or could have been sold for in that market, being what it was.

3. In such case, the plaintiff is not entitled to interest upon the amount recovered for breach of warranty.

(*Mace* v. *Ramsey,* 74 N. C. 11 ; *Oldham* v. *Kerchner, ante* 106 ; *Devereux* v. *Burgwyn,* 11 Ire. 490, cited and approved.)

CIVIL ACTION, tried at June Special Term, 1878, of WAKE Superior Court, before *Seymour, J.*

Upon the opinion of this Court in same case, 78 N. C. 323, (where the main facts are stated) being certified to the Court below, and upon argument of the question of damages as found for the plaintiff by the referee, His Honor amended and corrected the report as to facts in the following particulars:—

1. That plaintiff bought 517 barrels of rosin at $3.50 a barrel, of defendants, on the 25th of October, 1865, which were delivered to and accepted by plaintiff, at Wilson, N. C., and that plaintiff expended two dollars a barrel in shipping the same to New York; that he bought the same to sell in some market other than Wilson, and defendants had notice of its delivery.

2. The market price of strained rosin in New York on the 3rd of January, 1866, when said barrels arrived there, and the rosin was inspected, was $6.75 a barrel; and said price fell between said dates $1.75 a barrel in that market.

3. The said price also fell between the 3rd of January and February, 1866,—during the period when Dollner, Potter & Co. were causing 401 barrels of dross rosin to be prepared and strained for market—$1.25.

The Court held as matter of law that the measure of plaintiff's damages was the difference between the market price at Wilson on the 25th of October, 1865, of 401 barrels of strained rosin, and the value at the same place and date of the 401 barrels of dross rosin actually delivered, with interest on same from the 11th of September, 1866, the day of service of the writ in the action, until payment; and

found the damages so assessed, to be $588.36, of which sum $327 bears interest from the 24th of June, 1878, till paid, and gave judgment accordingly, from which ruling the plaintiff appealed.

*Messrs. E. G. Haywood* and *D. G. Fowle* for plaintiff.
*Messrs. Gilliam & Gatling,* for defendants.

RODMAN, J. Many cases may be supposed in which the measure of damages adopted by the Judge would be properly applicable. We think however it was not applicable under the circumstances of this case. The Judge finds as a fact that plaintiff bought the rosin to ship to and sell in some other market than Wilson, of which defendant had notice on the 25th of October, 1865, when it was delivered. No certain market was stated, and the meaning of the notice then would be that the purpose of the plaintiff was to sell in any of the usual markets for the article which he might afterwards determine on, such as Norfolk, New York, or Boston, and it might perhaps include any usual market in a foreign country. *For the purposes of the present question* the contract of the defendant may be regarded as a contract to deliver the rosin at any usual market to be named by the purchaser, the purchaser taking on himself the risk, trouble and expense of the transportation. As damages recoverable on a breach of a contract are the natural and probable consequences which the parties may be supposed to have had in contemplation, it would seem reasonably to follow that a knowledge by a vendor of the purpose which the vendee had in view in making the purchase, was an essential element in estimating the damages likely to be sustained by a breach. Many cases support this proposition. If a visitor to a watering place on the ocean should contract with an owner of a boat for its use for the purpose of a pleasure sail, the damages on a breach

by the boatman would be merely the additional price which the visitor might be compelled to pay for another boat, or if no other could be got, the value which a jury might put on his disappointment. But in *Mace* v. *Ramsey*, 74 N. C., 11, the charterer of the boat was held entitled to recover the profit which he would have made under the circumstances which were in the contemplation of both parties.

So in *Hadley* v. *Baxendale*, 9 Exch. 341, it was said by the Court that if the defendant had been informed that the consequence of his delay in delivering the shaft would be the stoppage of plaintiff's mills, the measure of the damages would have been the damages which would naturally follow under the special circumstances.

In *Page* v. *Parcy*, C. & P. (34, E. C. L. R., 628,) the wheat might have been good for flour, but it was sold with a knowledge that it was intended for sowing, and it was warranted to come up, and as it did not, the vendor was held liable for the loss of the crop.

In *Randell* v. *Raper*, 96, E. C. L. R., 84, the barley sold might have been as good for malting as Chevalier barley, but it was sold with a knowledge that it was to be sown, and as the vendor had warranted it to be Chevalier barley and it was not, the vendor was held liable for the deficiency in the crop, which probably exceeded several times the cost of the seed. See also *Passinger* v. *Thorburn;* 34, N. Y. 634, where cabbage seed was sold as Bristol cabbage seed.

There can be no doubt that a vendee who takes a warranty and gives notice that he buys to sell again in another market, may include in his damages both the losses he actually sustained by reason of the breach, and also the profits he would have made upon resale, had the article been what it was warranted to be. The authorities cited by *Mr. Haywood* in his learned argument, as well as the case of *Oldham* v. *Kerchner*, ante 106, and the authorities there cited, fully sustain the doctrine. The only just

measure of the plaintiff's damages in this case is the difference between what the rosin would have sold for in a reasonable time after its purchase in the market which the plaintiff had by the circumstances of the contract a right to select, and did select,—New York—if it had been what it was warranted to be, and the sum it did actually sell for, or could have been sold for in that market being what it was. This implies of course that the valuation in New York was a fair one, which is not disputed. In stating what we conceive to be the rule, I have said that the sale must be within a reasonable time; a vendee would not be allowed to hold on for an indefinite time, during which fluctuations of price might occur, and sell at a time prejudicial to his warrantor. In this case, however, no question of that sort occurs, as the prices of strained rosin in New York fell between the earliest period at which it could have been got there, and the day of its arrival, when the defect in the article was discovered and the valuation of it made, and the delay was favorable to the vendor. It is found by the Judge that 401 barrels of strained rosin would have sold in New York on the 3rd of January, 1866, for $2,706.75, and the article which was warranted to be strained, but turned out to be an inferior article, could have been sold for $675.50 and no more. The difference being $2,031.25 is, we think, the amount of damages which the plaintiff has sustained by defendants' breach of warranty.

Whether interest from the commencement of the action should be added to this sum is a question on which we have had some difficulty. I know of no established rule which governs such a case. The nearest approximation to a rule that I have found is in *Devereux* v. *Burgwin*, 11 Ire 490. The facts of that case are not fully stated. It appears, however, that the parties being tenants in common of large bodies of land agreed to a partition to be made by arbitration, whose award was not to be absolutely binding,

but either party might refuse to abide by it, in which event he was to pay $1,000 as stipulated damages. The award was made and the defendant refused to abide by it, and the plaintiff sued for the $1,000 and claimed interest from the time when defendant refused to abide by the award, or at least from the time when the writ issued, and also filed a bill in equity for the partition of the lands. This Court refused to allow interest from either date, on the ground that it was not given by law. In the course of the opinion PEARSON, J., says, in brief: Interest is allowed when given by statute or by express or implied agreement, as for money lent or due on account stated, &c. In *trover* or trespass *de bonis asportatis*, the jury might in their discretion allow interest on the value from the time of the conversion or seizure. He says: "We are not at liberty to relax the rule any further," &c. This case does not come strictly within either class of the illustrations given. But clearly the plaintiff is not of the class which is said to be entitled to interest as a right and *ex debito justitiæ*. His claim would be subject to the discretion of a jury. But in this case a trial by jury was waived, and it was left to the Court to find the facts and the law. The Judge below, in the view which he took of the case and of the rule as to the measure of damages, allowed the plaintiff interest upon the damages which he found he had sustained. But the view which he took of the facts governing the measure of damages and of the law applicable to them is so different from that taken by this Court, that we can not take his finding on that question as the verdict of a jury. A verdict we could not alter, we could only set it aside and send the case to a new jury ; and it was to avoid the expense and delay of such a proceeding that the parties submitted the facts and the law to the Court. Probably this Court would not think itself justified in changing any state of facts found by the Judge. But the right to interest is not a fact; it is in its nature and

necessarily a legal conclusion from the facts. And although it has not in cases like this yet been defined by clearly cut rules, and has therefore usually been left to the discretion of a jury, yet in the progress of the law as a science it must and will be so defined; and the question in what cases interest shall be allowed, and in what not, will be recognized as properly coming within the duty of judicial instruction, just as the question of the measure of damages now is, although until recently questions of that sort were considered too versatile and various to admit of being governed by certain principles, and were left necessarily as was supposed to the discretion of a jury.

In the present case we are obliged to decide whether the plaintiff is entitled to interest or not. It can not be sent to a jury, for the parties have waived that mode of trial; or sent back to the Judge, for he has once decided it and his decision is before us on appeal. We have before us every fact which he had or can have, and he could only decide it as we may, by applying some rule of law.

We have a precedent in the case of *Devereux* v. *Burgwin*, in which this Court did decide on the right to interest as a question of law, and refused to allow it, although the debt on which it was claimed as little belonged to either of the classes mentioned, as that in this case does. It is a rule which may be gathered from the cases that whenever a debtor has notice or ought to know that he owes a *certain* sum, and when he is to pay, if he fails to pay it, he ought to pay interest. In the present case although we may assume that the defendant had notice by the commencement of the action, that he was looked to for the payment of damages, yet as a fact, not only was the amount technically unliquidated, but owing to the unsettled state of the law, it was uncertain. He could not safely and without risk pay any sum until it was ascertained by a judgment which he might expect it speedily would be.

Moreover, although the defendant warranted the article and it did not correspond to the warranty, whereby he became liable in damages, yet there was no fraud or gross negligence on his part. The plaintiff threw him off his guard by assuming to select the article, and was guilty of what may be called by analogy "contributory negligence." For these reasons we think the plaintiff is not entitled to interest.

He will have judgment here for $2,031.25 and costs.

Error.

PER CURIAM.                                    Judgment reversed.