W. M. STORY, TRADING AS W. M. STORY LUMBER CO., v. C. W. STOKES AND J. F. STOKES, TRADING AS VALLEY LUMBER CO.

(Filed 5 November, 1919.)

**1. Contracts—Questions of Law—Questions for Jury—Trials.**

What is the contract that was made by the parties is an issue of fact for the determination of the jury, but when it is admitted or proven, its meaning is a matter of law for the Court.

**2. Principal and Agent—Ratification—Evidence.**

In this case it is held that upon the material question of whether the principal had accepted a contract made in its behalf by its agent, there was sufficient evidence for the determination of the jury, that it had done so, not alone from the correspondence and other writings between the parties, but upon the oral evidence and consideration of their acts and conduct evidencing their mutual intent.

**3. Appeal and Error— Contentions— Instructions— Objections and Exceptions.**

To errors claimed in the statement of the contentions by the trial judge, his attention must have been called at the time so that he could have had opportunity for making the proper amendments, or exceptions thereto will not be considered on appeal.

**4. Contracts—Carriers of Goods—Embargo—Tender of Shipment—Defenses —Evidence—Trials.**

Where an action is brought against the seller of lumber for his breach of contract in not shipping it, and it appears that the defendant has not tendered it for shipment, the fact that an embargo had been placed on shipments will not avail as a defense, where special permits for shipment had been secured by the other party, and especially where the determination of the controversy has been made to depend upon other matters.

**5. Contracts—Breach—Vendor and Purchaser—Damages—Contemplation of Parties—Resale—Profits Prevented.**

Where the seller of lumber knew the purchaser was a wholesale dealer, who was selling under contract to others, and had so sold the lumber, and breached his contract for its delivery, the profits prevented thereby under contracts of sale made by the purchaser are held to be certain and capable of admeasurement, and within the reasonable contemplation of the parties at the time of making the contract, as a probable result of its breach, and may be included in the damages recoverable in the purchaser's action.

**6. Contracts—Breach—Place of Delivery—Damages.**

*Held,* in this action to recover damages of the seller of lumber for his breach of contract in not shipping it, that, according to the shipping instructions and other evidence, the delivery was to be made in New York and the market price there could be used as the basis for the admeasurement of the damages.

**7. Evidence—Letters—Correspondence—Memoranda—Book Entries.**

The admission in evidence of a letter in the correspondence written by the objecting party, relating to a contract made by him for the sale of lumber, when material, may properly be admitted as his declarations; and entries made on the sales book by the witness may be used by him to refresh his memory as to the transactions entered, especially when he has testified to his independent recollection thereof.

**8. Contracts— Breach— Vendor and Purchaser— Resales— Damages — Evidence.**

Where the plaintiff has made various contracts for the sale of lumber, based upon his purchase of the lumber for wholesale purposes from the defendant, with the latter's knowledge, it is competent for the plaintiff to show by his evidence his inability to perform his own contracts of sale, by reason of defendant's failure to ship the lumber, as bearing upon the measure of damage he has sustained by the said breach.

CIVIL ACTION, tried before *Lane, J.,* at May. Term, 1919, of DAVIDSON. Plaintiffs alleged that defendants are engaged in the business of operating sawmills and selling lumber, at Newsom, N. C., and the plaintiffs are engaged in the business of buying lumber and selling the same at wholesale to the trade, at the city of New York. Plaintiffs further, allege that on the 17th day of April, 1917, the plaintiffs and defendants made a contract by the terms of which contract the defendants sold to the plaintiffs a lot of lumber, as follows, to wit:

500,000 feet 1 x 4 and up, S2S, at $14.
2 cars 2 x 4-10 and up, S1S and 1E, at $14.
250,000 feet 2 x 4, 6, 8, 10, and 12-10 and up, S1S and 1E.

And the defendants agreed to deliver said lumber to the plaintiffs
f. o. b. cars on a 12-cent rate of freight to Norfolk, Virginia. That
defendants failed to keep and perform the contract and to deliver the
lumber as promised, and when they were requested by plaintiffs to do so,
and because of this breach and failure to deliver, the plaintiffs were
compelled to buy lumber, in the open market, at higher prices than those
named in the contract for the purpose of filling their contracts with their
customers, and by reason thereof they were damaged to the amount of
five thousand five hundred and twenty-seven dollars, for which amount
they demand judgment.

Defendants denied that they were engaged in operating sawmills, but
admitted that they were engaged in selling lumber, and that plaintiffs
were engaged in buying it to be sold at wholesale to the trade, as alleged;
they deny the contract and the other material allegations of the com-
plaint.

The jury rendered a verdict for the plaintiffs, and assessed their dam-
ages at $2,125. Judgment was entered thereon, and defendants appealed.

*J. Gilmer Korner, Jr., Louis M. Swink, Fred S. Hutchins, and Walser
& Walser for plaintiffs.*
*Raper & Raper for defendants.*

WALKER, J., after stating the facts as above: The defendants have
reserved several exceptions as to evidence and other matters affecting
the merits of the case and the damages. The objections to evidence will
be postponed for consideration until we have passed upon the other
alleged errors, which we will discuss in the order of their assignment.

The court properly submitted to the jury the controverted question,
whether the contract, which was made by Stemple for the plaintiffs, with
Stokes for the Valley Lumber Company, had been accepted, and con-
firmed by the plaintiffs. What is the contract? is a question of fact for
the jury (*Devries v. Haywood,* 64 N. C., 83), but when the contract is
admitted, or proven, its construction is a question of law for the court.
There was some evidence here that the contract made by Stemple had
been confirmed, and, moreover, that defendants so understood it. It was
for the jury to say, by their verdict, what was the truth of the matter.
The instruction of the court in this respect was simple, direct, and clear,
and left it to the jury to find whether there had been an approval by the
plaintiffs of the terms of the Stemple contract, which was made subject

to their ratification. We do not think that this was to be determined solely by the letters, or other writings, upon a legal construction of them, but upon the evidence, oral and written, because it was a question of intention, that is, what the parties said, and did, and what they mutually meant by their acts and conduct. The defendants, in several letters, particularly the one of 14 May, 1917, complain, not that the parties had disagreed about the specific terms of the contract, but that they had been disappointed in getting the necessary stock, which they thought had been secured, and promised if they could get the cars accepted for immediate shipment that they would send forward at least one car, regretting their inability to serve the plaintiffs better. They still did not ship, and plaintiffs' letters then urge them to do so and notify them that they have made contracts of resale. Storey went to Newsom, N. C., talked with the defendants, and he says they promised "to get off two cars promptly." When defendants gave one excuse after another for not shipping—failure of parties with whom they had contracted for stock, to deliver the same, embargo of the railroad companies on shipments, and lack of permits—plaintiffs promised to help them out in regard to these matters, and did secure a special permit. The correspondence tends to show that defendants were not attempting to perform their contract, and plaintiffs complained of it, and charged that their Mr. Stemple had informed them of defendants' selling to other parties the lumber which they had contracted to ship to them. The excuse for not shipping the lumber, as stated in letters of 21 May and 4 July, 1917, and in others, seemed to be that they could not get the stock. They do refer in one of the letters to some disagreement as to the way the lumber should be worked and the terms of settlement, but when we examine the lengthy correspondence, we can easily discover some evidence for the jury to the effect that the contract was sufficiently understood, and especially so when it is read in the light of the oral testimony. The judge stated to the jury that, according to Storey's testimony, the plaintiffs confirmed the contract, as soon as they heard from Stemple what it was, and the conduct of the defendants subsequently, as disclosed by the correspondence and the other testimony, supports the statement.

2. Several of the exceptions were taken to the judge's recital of the different contentions in the case, as to the evidence. If they were not correctly stated, the judge should have been requested, in due time, to make the proper amendments. This was not done. *Matthews v. Myatt,* 172 N. C., 230; *S. v. Merrick, ib.,* 870.

3. As to the embargo on shipments, this is no protection to the defendants, for they did not tender the lumber for shipment, and, besides, the plaintiffs proposed to get for them the necessary permits.

The other parts of the charge were clearly right, and perfectly fair to both parties. There was ample evidence to support it, and defendants have no just ground for complaint.

Plaintiffs assert that defendants refused to ship the lumber, not for the reasons they gave, that they could not get the stock from which to make it, or that its shipment had been embargoed, but because the market price of lumber was rapidly rising, and they had found another customer with a better price, and that the defendants' excuses were not frank and well founded. While this may or may not be so, and it was denied by the defendants, we are unable to declare that there was absolutely no evidence to sustain such a theory, and, therefore, we cannot say that the argument was so wholly unfounded that it should not have any weight with the jury, but should have been excluded from the consideration of the case.

4. As to damages. The sale of the lumber was made to the plaintiffs with full knowledge on the part of the defendants as to the nature of their business, in other words, that plaintiffs were buying the lumber for resale, and defendants were specially informed of it, and the correspondence, and other evidence, show that plaintiffs had outstanding contracts with other parties for the purchase of the lumber at a higher price, which would bring a considerable profit to the plaintiffs. It was held, in *Johnson v. R. R.*, 140 N. C., 574, 577, that, when the action is for a breach of contract, the damages recoverable are such as naturally flow from the breach, and such special or consequential damages as are reasonably presumed to have been within the contemplation of the parties at the time they made the contract, as the probable result of a breach of it. In ascertaining what damages come within the rule, it is proper to examine, not only the terms of the contract, the subject-matter, etc., but also to inquire whether such circumstances or conditions as produced special damages were communicated to the defendant. We apprehend that the same rule prevails when an action in the nature of tort is brought for the breach of a duty arising out of contract, citing *Williams v. Tel. Co.*, 136 N. C., 82; *Dayvis v. Tel. Co.*, 139 N. C., 79, and *Lee v. R. R.*, 136 N. C., 533, where it was said: "It is immaterial whether we treat the cause of action as for a breach of contract or for a negligent omission to perform a public duty arising out of a contract. The damages in either case are confined to such as were reasonably within the contemplation of the parties when the contract was made by which the duty to the plaintiffs was assumed. That for failure to deliver freight, when the carrier is not informed of the special circumstances causing the loss of the plaintiff's contract with other persons, the measure of damages is the difference between the market value of the article at the time it ought to have been delivered and the time it was in fact delivered."

Joyce on Damages, sec. 1956, thus states the rule: "Where the delivery of freight is negligently delayed by a carrier, there may be in an action for the breach of the contract recovery of such damages as are the natural and proximate result of its act, and for such as reasonably might have been expected to be within the contemplation of the parties at the time of entering into the contract, as the probable result of a breach. When the carrier has notice of the fact that a delay in the delivery of the goods will result in an unusual loss or some special damage to the shipper, there may be a recovery for the actual damages sustained, when the notice is of such a character that it will be presumed that the carrier contracted with reference thereto." *Lindley v. R. R.,* 88 N. C., 547; *Swift River Co. v. R. R.,* 169 Mass., 326.

*Justice Rodman* said, in *Lewis v. Rountree,* 79 N. C., 122, 124: "The contract of the defendant may be regarded as a contract to deliver the rosin at any usual market to be named by the purchaser, the purchaser taking on himself the risk, trouble, and expense of transportation. As damages recoverable on a breach of a contract are the natural and probable consequences which the parties may be supposed to have had in contemplation, it would seem reasonably to follow that a knowledge by a vendor of the purpose which the vendee had in view in making the purchase, was an essential element in estimating the damages likely to be sustained by a breach. Many cases support this proposition."

And again: "There can be no doubt that a vendee who takes a warranty and gives notice that he buys to sell again in another market, may include in his damages both the losses he actually sustained by reason of the breach, and also the profits he would have made upon resale, had the article been what it was warranted to be."

In *Mace v. Ramsey,* 74 N. C., 11, the charterer of a boat was held entitled to recover the profit he would have made, under the circumstances, which were in the contemplation of both parties. The rule of damages was held, in *Spiers v. Halstead,* 74 N. C., 620, to. be the profit which plaintiff would have made on a resale of the goods, which really, in that case as it is here, was the difference between the contract price and what he could get for the goods at the place of delivery. *Clements v. State,* 77 N. C., 142.

We thus stated the general rule, in *Machine Co. v. Tobacco Co.,* 141 N. C., 284, 289: "The amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach. *Benjamin v. Hilliard,* 23 How., 149; *Mace v. Ramsey;* 74 N. C., 15. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the con-

tract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed. *Ashe v. DeRosset,* 50 N. C., 299; *Griffin v. Colver,* 16 N. Y., 489. It is the rule last stated which principally raises the doubt as to whether profits of the future should be included in any estimate of damages. They may be necessary to completely indemnify the injured party, and they may also answer the other requirement, in that the loss of them may naturally be expected to proximately result from a breach of the contract; but there still remains another important element to be considered, and that is whether there is any reliable standard by which they can be ascertained, for we have seen that the damages must be certain, and this certainty which is required does not refer solely to their amount, but also to the question whether they will result at all from the breach. It is clear that whatever profits are rejected as an item in the calculation of damages, it is because they are subject to too many contingencies and are too dependent upon the fluctuations of markets and the chances of business to constitute a safe criterion for an estimate of damages." See, also, *Critcher v. Porter Co.,* 135 N. C., 542, 551, where we said: "In *Lewis v. Rountree,* 79 N. C., 123; 28 Am. Rep., 309, the plaintiff was permitted to recover upon the basis of the price of the rosin in New York, to which point it was shipped, for the reason that it was purchased for resale there, and the defendant had notice of it. In *Mace v. Ramsey, supra,* the boat was hired for a particular occasion, and the plaintiff had engaged a certain number of passengers at an agreed price. The Court held that such loss as ensued was within the contemplation of the parties." There are many authorities to this effect, and it may be well that we should refer to a few of them. The rule was laid down (in *Hadley v. Baxendale*) that the damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. 8 R. C. L., 455 (sec. 25). Where a contract is entered into with a view to future profits, such profits are to be deemed to be within the contemplation of the parties, and are recoverable if they are certain and can reasonably be estimated, in an action for a breach of the contract. *Wakeman v. Wheeler,* 101 N. Y., 205; *Davidson Hardware Co. v. Buggy Co.,* 167 N. C., 423, at p. 425. Where the plaintiff proves a contract, its breach, and the loss of a certain sum resulting from the breach, upon all the authorities the burden lies on the defendant to prove anything in diminution of the damages. *Rodman, J.,* in *Oldham v. Kerchner,* 79 N. C., at p. 114. The allowance of profits for the breach of a contract, when not

excluded as unnatural or remote, is wholly a question of the certainty of proof, and whenever a certain gain prevented is provable, and was contemplated by the parties, it may be recovered. *Joske Bros. v. Pleasants,* 53 L. R. A., p. 40 (note e). Lost profits may be recovered for breach of a seller's contract, where evidence relevant to the inquiry affords data from which the amount may be ascertained with a reasonable degree of certainty. *Hardware Co. v. Buggy Co.,* 167 N. C:, 423.

There are no such uncertainties, in this case, that the failure of any one of them would subvert the whole computation as to damages. And, in this connection, we may say that the defendants' contention that the deliveries were to be made at Newsom, N. C., is clearly unsound, as they were to be made in New York, according to shipping instructions, and it reasonably appears that the sales by the plaintiffs at that place were made according to market prices prevailing there. So that the case could be brought within the rule which the defendants rely on. *Berbarry v. Tombacher,* 162 N. C., 497; *Lumber Co. v. Mfg. Co., ib.,* 395; *Lumber Co. v. Furniture Co.,* 167 N. C., 565.

We are of the opinion that there was ample evidence, from which it could be inferred, that profit, which could be ascertained with sufficient certainty, would have been realized from a resale of the lumber, if the contract had been performed by the defendants, and that those cases cited by them, where the profits were uncertain or speculative, do not apply to the evidence in this record, or to the facts deducible therefrom.

5. As to the questions of evidence. The letter, exhibit "E," was competent, as it was a part of the correspondence between the parties. It came from the defendants, and contained their own declarations about the transaction. The book of sales, the entries in which were made under his supervision, was competent to refresh the memory of the witness, and to corroborate him (*Bowman v. Blankenship,* 165 N. C., 521-522), and besides, he testified that he had an independent knowledge of the facts and items recorded in it. The testimony as to plaintiffs' inability to perform their own contracts of resale, which were made in reliance upon the defendants' shipment of the lumber, according to the terms of their contract, was competent, as it tended to show what the damages were—how much they had lost by the defendants' delinquency. The latter knew that the lumber was purchased from them for resale in New York. They practically admit this to be so by their answer to the first two sections of the complaint. They must have known that plaintiffs would have to supply the place of lumber they should have received from them, in order to save themselves from answering, in damages, to their own customers.

The other exceptions, not covered fully by what we have already said, are in themselves without any merit.

We find no error in the record, after a most careful examination of it, and a full consideration of the material exceptions.

No error.